UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| JAMES BELL, | No. ED CV 05-00706-VBK |
| Plaintiff, | MEMORANDUM OPINION, AND ORDER THEREON |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff James Bell ("Plaintiff"), by and through his counsel, started this action pursuant to 42 U.S.C. §405(g), seeking review of the decision of the Commissioner of Social Security ("Commissioner"), which denied his application for Supplemental Security Income ("SSI").

Plaintiff filed his Complaint on August 3, 2005. On August 17, 2005, the parties consented to proceed before United States Magistrate Judge Victor B. Kenton, pursuant to 28 U.S.C. §636(c). The Commissioner timely filed an Answer to the Complaint, and the Certified Administrative Record ("AR") on February 1, 2006. On April 28, 2006, pursuant to this Court's case management Order, the parties filed a Joint Stipulation ("JS"). The Court then took the matter under submission.

This Memorandum Opinion shall constitute the Court's findings of facts and conclusions of law.

## BACKGROUND

On July 8, 2002, Plaintiff filed a SSI application under the provisions of Title XVI of the Social Security Act (the "Act") alleging an onset of disability of March 2, 1999. (AR at 29-30).[1] The application was denied initially on September 5, 2002, and on reconsideration on December 13, 2002. (AR at 35-40, 41-44). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")(AR at 45), and after a hearing held on December 14, 2004,(AR at 55-61, 466-503), in a decision issued on March 4, 2005, the ALJ found Plaintiff not disabled. (AR at 14-22). On May 2, 2005, Plaintiff filed a Request for Review of the ALJ's decision. The Appeals Council denied the request on June 17, 2005, thus rendering the ALJ's decision the Commissioner's final decision in the case. (AR at 6-8).

Plaintiff raises the following issues and contentions:
1. The ALJ failed to properly consider Plaintiff's subjective complaints, and his adverse credibility assessment of the Plaintiff was not in accordance with Social Security law.
2. The ALJ did not properly consider all of the available medical evidence, and failed to properly develop the record on the issue of medication compliance in his assessment

---

[1] Plaintiff had previously filed a SSI application under Title XVI of the Act on February 9, 2001. That application, alleging disability based on a diagnosis of diabetes mellitus and hypertension, and denied on June 14, 2001, (AR at 28, 73-75), was neither under review in the Administrative Law Judge's determination, nor is it in this Memorandum Opinion.

regarding Listing 11.02(A).

3. The ALJ failed to consider the vocational expert's testimony.

4. In his assessment of Plaintiff's Residual Functional Capacity ("RFC"), the ALJ failed to properly consider the opinions of Plaintiff's treating physician.

## **DISCUSSION**

The Court, pursuant to 42 U.S.C. §405(g), has the authority to review the Commissioner's decision denying Plaintiff's disability benefits to determine whether his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

A claimant is "disabled" for the purpose of receiving benefits under the Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in

substantial gainful activity; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. §§404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R. §§404.1520(c), (416.920(c). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. §404, Subpt. P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. §§404.1520(e), 416.920(e). When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§404.1520(f), 416.920(f).

Following this sequential evaluation process, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the past 15 years. (AR at 21, Finding 1). At Step Two, it was determined that Plaintiff has severe seizure disorder, diabetes, hypertension, asthma, and obesity, but at Step Three, the

ALJ found that Plaintiff does not have an impairment or combination of impairments as defined in, or medically equal to one in the Listing. (Id., Finding 2). Additionally, the ALJ rejected Plaintiff's allegations of the degree of his impairments as not credible. (Id., Finding 3). At Step Four, the ALJ determined that the Plaintiff has a residual functional capacity to perform light work. (Id., Finding 4). Since Plaintiff has no past relevant work experience or acquired work skills, (id., Findings 5, 8), and based on his assessment of an exertional capacity for light work, (id., Finding 9), the ALJ at Step Five identified various available jobs in the national economy which Plaintiff can perform, (id., Finding 12), thus finding that Plaintiff was not under a disability. (Id., Finding 11).

I

**THE ALJ ERRONEOUSLY ASSESSED PLAINTIFF'S CREDIBILITY**

The ALJ articulated seven reasons to discount Plaintiff's credibility. (AR at 20). The first, third, and fifth reasons hinge on Plaintiff's lack of compliance with his medications[2]:

> "First, the [Plaintiff] is noncompliant with his medications; when taking his medications as prescribed, his impairments are sufficiently controlled without significant medication side effects, to allow for the performance of work activities within the parameters found herein. The record shows that when taking his medications as prescribed, the [Plaintiff]'s

---

[2] The balance of the reasons are that the opinions of various medical sources rule out the existence of a mental impairment (reasons Two and Six), and that other medical sources do not find him to be disabled (reasons Two and Seven). (See AR at 20).

5

>impairments are under control, without evidence of end-organ damage, and without significant medication side effects. [...]
>
>Third, Dr. Alpern opined that the [Plaintiff] is able to perform a range of light work and found no evidence of significant work-related limitations on the basis of mental impairments, when the [Plaintiff] takes his medications as prescribed. [...]
>
>Fifth, indeed, the record shows that the [Plaintiff]'s examinations are generally benign, there is no evidence of end-organ damage, and blood sugars, blood pressure, and seizures are controlled when the [Plaintiff] takes his medications as prescribed."

(AR at 20)(emphasis added).

Defendant contends that the "inconsistencies between [Plaintiff's] assertions and... the objective medical evidence of record," and the lack of justification for Plaintiff's noncompliance with treatment, support the ALJ's credibility determination. (JS at 19-21). The Court disagrees. The ALJ did not fulfill his duty to investigate and develop the record as to the issue of noncompliance. See Smolen, 80 F.3d at 1288 (The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered.").

**A. The ALJ Failed In His Duty To Fully And Fairly Develop The Record With Respect To Plaintiff's Failure To Comply With Treatment.**

The ALJ in a Social Security matter has the obligation to fully

6

and fairly develop the record even where the claimant is represented by counsel. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). SSI hearings to determine disability "are not adversarial in nature [and the] ALJ has [a] basic duty to 'inform himself about facts relevant to his decision.'" DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991)(citations omitted). A "finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288; Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998)).

Plaintiff's unchallenged failure to comply with his prescribed drug treatment substantially prompted the ALJ's negative credibility assessment. Defendant is correct to assert that Plaintiff has not been compliant with his medications, and that a failure to follow the prescribed treatment without good reason enables the Commissioner to find a claimant "not disabled." (JS at 20, citing 20 C.F.R. §416.930(b)(2005)). Throughout his account of Plaintiff's clinical history, the ALJ noted every episode where the record indicates noncompliance by Plaintiff. (AR at 15-19); however, Plaintiff's testimony specifically alerted the ALJ to the possibility that his failure to comply with treatment was a consequence of his inability to afford it. At the hearing, Plaintiff testified as follows:

> "[T]he problem with me is, I can't go to the hospital over here, the one close by my house, because they charge and I don't have income ... so I don't have no way of getting ... medicine or whatever, so I go way out to

U.S.C. when I can because they don't charge nothing..." (AR at 482-483)(emphasis added).

As Plaintiff's counsel argues, "Plaintiff is limited to utilizing a county hospital for any and all treatment, and is still billed for any such treatment which he cannot afford do pay." (JS at 17; AR at 195-302, 365-394, 401-419, 432-463). Out of roughly fifty recorded clinic or emergency room visits over almost a four-year period, only four took place at the U.S.C. Medical Center, (AR at 432-444), where Plaintiff is apparently not charged for the services received or medications. Plaintiff has "no car of his own, and is dependent on others to transport him to the hospital," (JS at 17; AR at 126, 130-131, 136-137). Plaintiff testified that on one occasion, his daughter, who lives in Los Angeles and suffers from cancer, picked him up and he spent two nights with her. He took that opportunity to visit the U.S.C. Medical Center to obtain his medication refills free of charge. (AR at 476). Because U.S.C. is seventy miles from Plaintiff's residence, such visits are apparently the exception, not the rule.

Based on this evidence, it may be a reasonable inference that it is a financial hardship for Plaintiff to obtain appropriate medication. At his local facility, the Moreno Valley Riverside County Regional Medical Center, Plaintiff testified "they charge and I don't have any income." (AR at 482). Nonetheless, Plaintiff has consistently sought treatment for his diabetes, hypertension, breathing problems, and epilepsy. The vast majority of his visits to the Riverside hospital appear to occur immediately after a seizure

episode.[3]  The scenario which is suggested by this chronology is that Plaintiff cannot afford to purchase seizure medication, cannot afford medical treatment at his local hospital, cannot afford to regularly travel to U.S.C. Medical Center for treatment and medication, and, as a result, suffers frequent seizures.  The ALJ's finding that the seizures could be controlled "when taking medications as prescribed,"(AR at 20), is, therefor, incomplete.  Plaintiff never denied his failure to comply with the medication treatment, but nothing in the record indicates that he was malingering, or that he was purposefully and willfully avoiding treatment.

A claimant for SSI benefits may have "good reasons" not to seek medical treatment or to treat in an inconsistent manner.  SSR 96-7p, 1996 WL 374186, at *7.  A valid explanation for noncompliance could be that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." Id. at *8.  Where the Commissioner "makes a determination of 'failure,' a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable."  SSR 82-59, 1982 WL 31384, at *1.  No such determination was made here.  If Plaintiff is unable to afford prescribed treatment for which free community resources are not reasonably available, Plaintiff's "failure to follow prescribed treatment will be generally accepted as 'justifiable' and... would not preclude a finding of 'disability.'" Id. at *4.

---

[3] According to the AR, Plaintiff was treated at the Riverside Medical Center following a seizure episode at least fourteen times, after which he was usually given medication and treatment guidelines, and later discharged. Other occurrences of his hospital visits include complaints of diabetes-related blurry vision, breathing difficulties in connection with a diagnosis of a surgery-bound deviated septum, limb swelling, polyuria, and a purulent edema. (See AR at 195-302, 365-394, 401-419, 432-463).

1    The Ninth Circuit has ruled consistently: "A disabled claimant
2 cannot be denied benefits for failing to obtain medical treatment that
3 would ameliorate his condition if he cannot afford that treatment."
4 Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).  Dr. Alpern, the
5 medical expert, when questioned by Plaintiff's counsel, acknowledged
6 that but for the compliance issue, Plaintiff's impairments could equal
7 listing 11.02(A) as established in the SSA's Listing of Impairments:
8    "Q   Doctor, would you – how does the obesity affect these
9         impairments?
10   A    The obesity would affect the diabetes and make it worse
11        although it could be controlled with more medication.  It
12        would affect the hypertension... the back [...]
13   Q    All right.  And when you say it would affect all these
14        things –
15   A    It means it would make the symptoms worse to some extent.
16        In other words, the shortness of breath with activity
17        might be a little more because of the obesity.
18   Q    And that would be a factor in equaling 11.02 but for the
19        compliance issue?
20   A    Yes."
21 (AR at 496).
22
23    When "the [Plaintiff's] condition -without treatment- satisfie[s]
24 the disability criteria," a Plaintiff "who meets the disability
25 criteria may not be denied benefits if he is unable to afford the
26 treatment that would help him."  Gamble, 68 F.3d at 321. If further
27 development of the record proves that Plaintiff's failure to follow
28 treatment is due to his inability to afford it, such failure would be

1  clearly "justifiable."  On remand, these issues will be fully
2  developed.

### B. <u>The ALJ's Faulty Assessment Of Plaintiff's Credibility Affected His Evaluation Of The Different Medical Opinions</u>

Defendant contends that the objective evidence supported the ALJ's decision. (JS at 20). However, the assessments by the state agency physicians and medical expert, and the ALJ's discrediting of the treating physician, are strongly grounded on Plaintiff's failure to comply with treatment. The ALJ stated in his decision:

> "[T]he state agency medical expert program physicians have found that the [Plaintiff] is able to perform a range of light work... Dr. Alpern opined that the [<u>Plaintiff</u>] <u>is able to perform a range of light work</u>, and found no significant work-related limitations on the basis of mental impairments, <u>when the [Plaintiff] takes his medications as prescribed</u>. Dr. Chang opined that the [Plaintiff] is in fact able to perform a range of medium work..."

(AR at 20)(emphasis added).

> "I have considered the opinion of Dr. Yam, but do not accord great weight to his conclusions. Dr. Yam's opinion concerns matters reserved to the Commissioner [and] admittedly does not concern any continuous period of not less than 12 months. <u>Dr. Yam does not take into account the claimant's noncompliance with treatment</u>."

(AR at 18)(emphasis added).

11

Consequently, given this flaw in the ALJ's credibility assessment, both the weight given to the treating physician and the medical expert's opinion, and Plaintiff's RFC, will need to be reevaluated based upon full development of the record. Similarly, the second and fourth issues raised by Plaintiff, i.e. the development of the record in the assessment regarding Listing 11.02(A), and consideration of the opinion of Plaintiff's treating physician, will need to be revisited. Since Plaintiff's RFC will be reevaluated, further testimony from the Vocational Expert will likely be necessary.

## II

**THIS CASE MUST BE REMANDED FOR FURTHER PROCEEDINGS**

The decision to remand for further proceedings or simply to award benefits is within this Court's discretion. See McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where, as here, there are issues yet to be resolved, a remand for further proceedings is the appropriate remedy. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

**ORDER**

**IT IS ORDERED** that this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

DATED: July 17, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE